[Civ. No. 15649. Second Dist., Div. One. Apr. 10, 1947.]

Estate of MARIE D. REID, Deceased. EBBA NILSEN, Respondent, v. ALBERT BENJAMIN DELTOMBE et al., Appellants.

Bailey & Poe, Rufus Bailey, Carl N. Huff, George I. Devor and Jacob Swartz for Appellants.

V. P. Lucas and Ben A. Hill for Respondent.

DORAN, J.—The judgment from which appeal is taken, is one admitting to probate, through the use of a carbon copy, a destroyed will of Marie Reid, deceased; said will bearing date of December 8, 1944, the provisions thereof being in favor of the respondent Ebba Nilsen, a friend of the deceased, who was appointed administratrix with the will annexed. No original will could be found although it was known that Mrs. Reid had executed two testamentary documents. The first of these was made in 1940, and designated decedent's husband Lot E. Reid, as the principal beneficiary. Thereafter, on August 15, 1944, the deceased and Lot E. Reid were divorced by a final decree, and the will of December 8, 1944, was executed, the latter will expressly revoking all former wills. Although divorced, it appears that the deceased and Lot E. Reid lived together from about February 15, 1945, until the death of Marie Reid on February 9, 1946.

Respondent's petition for probate alleged that the will of December 8, 1944, was in existence as of the date of the testator's death, and upon information and belief charged that Lot E. Reid, appellant herein, had fraudulently destroyed said will. Objections to the probate of this will were separately filed by Lot E. Reid, and by the appellant Deltombe who claimed to be a first cousin of Marie Reid. Appellant Deltombe did not appear at the trial and did not offer any evidence.

The trial court found that the deceased had never revoked or destroyed the will of December 8, 1944, which will "was usually kept in a cedar chest which was locked and the keys to which were kept in a dresser drawer, to which . . . Lot E. Reid had access; that after the death of said Marie Reid the said Lot E. Reid removed said Last Will and Testament of Marie Reid from the said cedar chest and destroyed the same." It was further found that the duplicate carbon copy presented for probate, contained all the terms of Marie Reid's last will.

█ The appellant Reid contends: "(1) that the 1944 paper was not proved to be the lost or destroyed will of the deceased within the meaning of section 350 of the Probate Code; (2) that the court's findings with respect to appellant Reid are inconsistent and contradictory and unsupported by any substantial evidence in the record; and (3) that the appointment of Ebba Nilsen as administratrix with the will annexed was, therefore, erroneous." Appellant Deltombe's brief likewise asserts that there is no evidence to justify the finding that the will admitted to probate was in existence at the time of the testatrix' death; and that there is no evidence that Lot E. Reid destroyed the will in question after Mrs. Reid's death. The basic contention of both appellants, therefore, is that the findings and judgment are not supported by the evidence.

That the carbon copy offered in place of the original will, correctly reflects the contents of the original, does not appear to be questioned. It likewise appears that the appellant Lot E. Reid had access to the cedar chest where the will was kept by Mrs. Reid; even after the divorce, Reid had such access. There is also evidence tending to show that Mrs. Reid believed that the will which was probated, was in existence shortly before her death and had given Mrs. Nilsen a card with the name of the attorney who had the carbon copy of such will.

Among other items of evidence the record discloses that the attorney who had drafted the will of December 8, 1944, delivered the original to Mrs. Reid, keeping in the law office the carbon duplicate in question; that Reid had seen this will in Mrs. Reid's possession about November 9th or 10th, 1945, at which time Reid claims that Mrs. Reid tore up and burned the will in the presence of Reid and the witness Beck. This date, it will be recalled, was about three months prior to Mrs. Reid's death. Reid testified that when this destruction took place, Mrs. Reid stated: "This is the will I made out to Mr.

and Mrs. Nilsen. Mrs.—— Mr. Nilsen has passed away and I never did care anything for that Swede and I am destroying the will." Walter M. Beck narrated seeing Mrs. Reid tear up the will on November 9, 1945, but in a sworn statement made outside of court, had stated that the alleged revocation by Mrs. Reid was on November 25, 1945. Accounting for Beck's presence in the house, Reid testified that Mrs. Reid had hired Beck to do certain work on the day in question; Beck, however, stated that the employment was by Mr. Reid. It is to be noted that on cross-examination, the witness Beck was asked: *"Did you ever hear Mr. Reid say that he had destroyed the will in favor of Mr. and Mrs. Nilsen?"*, *to which question Beck answered, "Yes."* (Italics added.)

The record also reveals various statements made by appellant Reid which, in connection with other evidence, furnish substantial support for the trial court's finding. For example, it appears that, after Mrs. Reid's death, when search for a will was under way, appellant Reid did not impart the information that Mrs. Reid had destroyed the will in respondent's favor, but stated to the latter, "Mrs. Reid has no will made out to you." Lot E. Reid also stated to Mrs. Nilsen, "There is a chance that there is a will in your favor and there is a chance that there is a will in my favor. Will you shake hands with me that if you get it you will give me half of it and if I get it I will give you half?" Again, "I will go fifty-fifty on this if you get it or if I get it." Reid also testified to making the following suggestion: "How would it be for me to say that I knew the will was destroyed, I seen it? I think I can say that and keep within the law." Mrs. Nilsen's version of this conversation is that Reid said: "I don't want it to go to the State and I am willing to go up and testify that I destroyed the will if I don't get into any trouble"; that thereafter Reid asked "if I (Mrs. Nilsen) was going to take this to court, and I said 'I don't know.' . . . after a little while he came back in and he said, 'Mrs. Nilsen, I have a proposition to make,'" (sharing the estate fifty-fifty with Mrs. Nilsen).

The witness Tom Hill testified to divergent statements by Reid that the latter had no knowledge of the will in Mrs. Nilsen's favor until the occasion when the copy of such will was read at an attorney's office, "and that he was amazed to learn that he was left out of the will"; later, "my brother asked him how he knew that this will had been destroyed, and he said he knew, and he said, 'Well, how do you know?' And he said,

'Well, I am not saying. I know it was destroyed, this first will I spoke of.' " After the decedent's safe deposit box was opened, Reid said, according to the testimony of Attorney Ben Hill, "that he didn't expect to find any will in the box," and later inquired "if it would be all right that he would be willing to go into court and testify that he himself destroyed the will." Ben Hill also testified to the following colloquy at Reid's residence: "And I said, well, I said, 'How do you know?' 'Well,' he says, 'she destroyed it.' And I said, "Well, how do you know she destroyed it?' 'Well,' he said, 'I know.' 'Well,' I said, 'Well, when was it destroyed?' And he said, 'Well, I am not saying. . . . I am positive that I know it was destroyed, but . . . I am not talking. . . . I have seen an attorney and . . . I am not talking anymore about it. . . . When I do my talking, . . . it will probably be in a court room.' "

The record also discloses that in November, 1944, Mrs. Reid informed Ebba Nilsen that a will had been executed in favor of the latter. Again, at a later date, in October, 1945, the deceased referred to the same will and told respondent: "Now, when Mr. Nilsen has passed away I am going in to Long Beach some day and have that will changed over in your name only so you will be the administrator and not have any trouble with it."

*Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689], cited by respondent, is not dissimilar to the instant case, the controlling question in the Bristol case relating to the sufficiency of evidence to support a finding that the deceased had never cancelled or destroyed a codicil. The court there held that "The rules of evidence, the weight to be accorded to the evidence, and the province of a reviewing court, are the same in a will contest as in any other civil case. . . . The rule as to our province is: . . . 'all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. . . . When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' "

In *Estate of Dean*, 62 Cal.App.2d 418 [144 P.2d 849], findings of the trial court that the will in question was lost or destroyed fraudulently by the decedent's husband, were likewise sustained on appeal, citing the Bristol case. Although the testimony of decedent's husband raised a conflict, there

was sufficient evidence to support the findings. The same may be said in respect to appellant Reid's testimony in the instant case;—it raised a conflict, but evidence and legitimate inferences remain to sustain the trial court's finding that the original of the will in favor of respondent was destroyed by Reid, and that this will had not been revoked by the testatrix.

The contention that the court's findings "are inconsistent and contradictory and unsupported by any substantial evidence" cannot be sustained. As said in respondent's brief, "Findings must be read together and where the clear intent is made plain the mere fact that a clause or sentence therein, when read alone, would appear to be contradictory such circumstances will not vitiate or render them insufficient. See *Vila* v. *Brovelli*, 3 Cal.App.2d 713 [39 P.2d 855]." In *Wallace Ranch Water Co.* v. *Foothill Ditch Co.*, 5 Cal.2d 103, 118 [53 P.2d 929], 'the rule is stated as follows: "It was formerly the rule in this state that where two findings on an essential fact are conflicting, neither can be relied upon to support the judgment. . . . It is also well settled, however, that when a general finding conflicts with a special finding, the latter controls. . . . Moreover, we are further of the opinion that under the power conferred on appellate courts by the addition of section 956-A to the Code of Civil Procedure in 1927, appellate courts, where justice required it, have the power, when findings are conflicting, to disregard one of the findings and to affirm the judgment, in order that, to use the express language of the section, 'wherever possible causes may be finally disposed of by a single appeal, and without further proceedings in the trial court, except where the interests of justice requires a new trial.' " In the instant case, the findings, when construed together, are not deemed contradictory or inconsistent, and even if they were, the above rule would prevent a reversal. The clear intent is made plain and there is substantial evidence to support those findings.

The judgment and order admitting the will to probate and appointing the respondent as administratrix with the will annexed, are therefore affirmed.

York, P. J., and White, J., concurred.