Filed 5/14/15  Estate of Gonzales CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Estate of ANTHONY GONZALES, Deceased. | B251233 |
| | (Los Angeles County Super. Ct. No. KP013821) |
| JUDITH SANCHEZ, Plaintiff and Appellant, v. ALMA DARNELL, Defendant and Respondent; VIRGINIA MURGUIA, Defendant and Appellant. | |

APPEAL from judgment of the Superior Court of Los Angeles County, R. Bruce Minto, Judge.  Affirmed in part, reversed in part.

Fuller & Fuller, Bruce P. Fuller and Kevin J. Heimler, and for Plaintiff and Appellant.

Moravec, Varga & Mooney and Henry J. Moravec III for Defendant and Appellant.

Gary C. Wunderlin for Defendant and Respondent.

_____

## INTRODUCTION

Judith Sanchez appeals the trial court's judgment admitting her brother's 2009 lost will to probate, and the trial court's findings regarding the effectiveness of her brother's transfer of several real properties to her and her daughter. Sanchez asserts that substantial evidence does not support the court's admission of the 2009 will, and that the court violated her due process rights by deciding that her brother never effectuated transfer of the properties to her and her daughter. Virginia Murguia cross-appeals, similarly arguing that the court improperly issued findings regarding her brother's estate's interest in property titled in her and her daughter's names, in violation of her due process rights. We affirm the court's judgment admitting the 2009 lost will to probate as it is supported by substantial evidence. We reverse the court's findings as to the real property because the parties lacked a meaningful opportunity to be heard on those matters and such findings violated their due process rights.

## FACTS AND PROCEDURAL BACKGROUND

Decedent Anthony Gonzales passed away in 2009, leaving behind a large estate and predeceasing his sisters Judith Sanchez, Alma Darnell, Virginia Murguia, Evelyn Chacon, Ethel Armenta, and Alice Tafoya, and his brother Hector Gonzales. In sorting through Decedent's possessions following his death, the sisters discovered multiple wills. The present dispute arose out of the parties' competing contentions regarding the selection of a will to probate.

At Decedent's residence, five of the sisters went through documents Decedent left in a safe, and discovered a holographic will dated June 15, 1998, and a statutory will dated June 16, 1998. Both wills named Sanchez as the executor and her children as the contingent executors. The holographic will did not dispose of Decedent's property, but the statutory will devised Decedent's entire estate to Sanchez. Sanchez petitioned to probate the 1998 wills.

One of the sisters also discovered a January 2009 holographic will at Decedent's residence. Chacon read the 2009 will aloud to the sisters, who also examined it. The will was later viewed by one of Decedent's nephews and his wife. Although the 2009 will also named Sanchez as executor, its terms were markedly different than the 1998 wills. The 2009 will instructed that the estate be divided equally among all of the siblings. Subsequently, the 2009 will could not be found. Darnell petitioned for the 2009 will to be admitted to probate. Contrary to the assertions of her siblings at trial, Sanchez denied the existence of the 2009 holographic will and testified that the document they examined was a jewelry list and not a will.

Also at Decedent's home were seven signed and notarized deeds to several of Decedent's properties, purporting to transfer five properties to Sanchez and two properties to her daughter. Shortly after obtaining these deeds from a safe in Decedent's home following Decedent's death, Sanchez recorded the deeds. As to Decedent's real properties, Darnell filed a petition to quiet title. In the quiet title petition, Darnell alleged that Sanchez fraudulently recorded deeds to several of Decedent's properties in Sanchez's and Sanchez's daughter's names following Decedent's death. Notably, Murguia and her daughter also had properties titled in their names, in which Decedent's estate may or may not have had an interest. Deeds to these properties in Murguia's and her daughter's names were recorded prior to Decedent's death.

The court bifurcated the trial and addressed the will contest first. During the bench trial, the court heard testimony from Decedent's sisters, nephew and niece. The court also reviewed letters from Decedent, the 1998 wills, and letters from Sanchez's attorney, which were sent to opposing counsel prior to trial. We discuss the evidence as needed in further detail below. Sanchez's theory of the case was that the 2009 will was fabricated by her siblings so that they could obtain part of Decedent's estate. In contrast, Darnell asserted that Sanchez had destroyed the 2009 will to increase her share of the estate.

The court concluded that the 1998 and the 2009 wills satisfied the statutory requirements for due execution and testamentary intent. However, the court found that the 2009 will existed at the time of Decedent's death and was so inconsistent with the 1998 wills that it effectively revoked the 1998 wills. The court found that the 2009 will required equal division of Decedent's estate amongst the seven siblings. Based on these findings, the court denied Sanchez's petition to probate the 1998 wills and granted Darnell's petition to probate the 2009 lost holographic will. The court determined that Sanchez should not act as a fiduciary to the estate, and instead appointed Darnell as executor. Despite its statements that trial was bifurcated, the court also found that the deeds executed before Decedent's death in favor of Sanchez and her daughter were not valid transfers as the deeds were never delivered to the grantees. The court further found that property titled in Murguia's and her daughter's names were purchased with funds from the sale of properties owned by Decedent.

## DISCUSSION

**1.** ***The Court Properly Granted Darnell's Petition to Probate the Lost or Destroyed Holographic Will***

Sanchez asserts that the court erred in granting Darnell's petition to probate the lost January 9, 2009 holographic will. Sanchez argues that substantial evidence does not support the court's findings as to (a) the due execution of the 2009 will and (b) the terms of the 2009 will.

The will's due execution, the terms, and existence are questions of fact; we review the trial court's findings of fact in a will contest for substantial evidence. (*Estate of Ben-Ali* (2013) 216 Cal.App.4th 1026, 1033; *Estate of Hoffman* (1955) 137 Cal.App.2d 555, 558; *Estate of Bristol* (1943) 23 Cal.2d 221, 223.) " 'Where, . . . extrinsic evidence is properly received, and such evidence is conflicting and conflicting inferences arise therefrom, the appellate court will accept or adhere to the interpretation adopted by the trial court provided that that interpretation is supported by substantial evidence.' [Citations.] 'It is for the probate court in the first instance to say whether the document was "signed" by the decedent, and its determination will not be disturbed unless it is

4

without support in the evidence.' [Citation]" (*Estate of Williams* (2007) 155 Cal.App.4th 197, 205-206; *Estate of Reid* (1947) 79 Cal.App.2d 34, 38.)

a.        *Substantial Evidence Supports Due Execution of the 2009 Will*

Sanchez argues that the elements of a valid holographic will have not been satisfied because the court found that the 2009 will may have consisted of different writings that were not all signed. "A holographic will is one entirely in the writing of the testator. The requirements are that it be signed, dated, and that it evidence testamentary intent. (See Prob. Code, § 6111.)" (*Estate of Wong* (1995) 40 Cal.App.4th 1198, 1204.) "Under the doctrine of integration, two or more handwritten documents which do not refer to one another may be admitted to probate when it is clear that the testator intended them to be his will. [Citations.] Such intent is evidenced where the several writings are connected by sequence of thought [citation], folded together [citation], or physically forming one document [citation]. A holographic will need not be signed at the end [citation], and the testator may alter a holographic will subsequent to the date on which he signed it. [Citation.] Such alterations, when made in the testator's handwriting, operate to adopt the old date and signature. [Citation.] 'If the papers are all holographic and there is a dating and signing somewhere among them, it is immaterial when or where the dating or signing was done so long as it may be reasonably inferred that the testator meant all the papers together to constitute his will and that the signature was written with the intent that it should there serve as a token of execution.' [Citation.]" (*Estate of Phippen* (1965) 238 Cal.App.2d 241, 248.)

Here, the court found that "[g]iven the conflicting descriptions of the January 9, 2009 holographic [w]ill, it is possible it consisted of different writings, some of which may not have been signed. However, separately and collectively[,] they showed testamentary intent, and sequence of thought, by reason of their physical attachment and continuity of purpose." The fact that all of the sheets of paper were not signed does not impact the validity of the 2009 holographic will because the pages showed testamentary intent through their physical proximity and collective purpose to devise the estate equally to the siblings, and because at least one sheet was signed.

5

Sanchez asserts that the court's finding that the pages of the will were "physically attached" is not supported by substantial evidence because several witnesses stated that the pages were not attached. Yet, the pages do not need to be attached for this holographic will to be valid, as witnesses testified and the court found that the pages were found in a safe physically together and showed continuity of purpose. (See *Estate of Wunderle* (1947) 30 Cal.2d 274, 282-283 [an intention of the testator that the handwritten instruments be construed together can be proven by either attachment or other "extrinsic evidence"]; *Estate of Phippen, supra,* 238 Cal.App.2d at p. 248 ["Under the doctrine of integration, two or more handwritten documents which do not refer to one another may be admitted to probate when it is clear that the testator intended them to be his will. [Citations.] Such intent is evidenced where the several writings are connected by sequence of thought [citation], folded together [citation], or physically forming one document [citation]."].)

Sanchez also argues that "not a single witness had any personal knowledge to testify to the handwriting or signature of the Decedent, and the court did not accept any one particular witnesses [*sic*] testimony regarding the Decedent's handwriting or signature on any particular document so as to authenticate any particular document whatsoever." (Boldface omitted.) Yet, the record indicates otherwise.

Decedent's sister Evelyn Chacon testified that the 2009 holographic will was completely written in Decedent's handwriting. Chacon stated that she was familiar with her brother's handwriting, which was distinctive, and that she had seen her brother's handwriting over a number of years. Chacon also stated that the will was dated January 9, 2009 and it was signed by Decedent. Chacon attested that she recognized the signature on the document as that of Decedent. Chacon read the holographic will to her sisters shortly after finding it amongst Decedent's possessions.

The sisters corroborate Chacon's testimony and support the conclusion that the will was entirely in Decedent's handwriting, was signed by him, and was dated. Decedent's sister Virginia Murguia testified that she saw the holographic will, and that it was dated January 9, 2009 and was written in Decedent's handwriting, which she had

6

been familiar with all of her life. Murguia also listened to Chacon read Decedent's will and heard her read his signature at the end of the will. Decedent's sister Ethel Armenta likewise testified that the holographic will was dated January 9, 2009, and was in her brother's very distinct handwriting. Armenta testified that she had viewed many documents containing her brother's handwriting prior to his death, and thus was familiar with his handwriting. Armenta also stated that she heard Chacon read that the will was signed by Decedent.

Lastly, Darnell testified that she both read through the will in its entirety and listened to Chacon read the will. She testified that the contents of the will were consistent with the words read aloud by Chacon. She further stated that the will was in her brother's handwriting, which she had seen many times before. Darnell testified that she recognized the signature on the third page of the will as Decedent's.

We conclude that ample evidence supports the finding that the 2009 will was duly executed. Contrary to Sanchez's contentions, Decedent's sisters had personal knowledge to testify to Decedent's distinct handwriting and signature. In finding that "[t]he terms of the January 9, 2009 holographic [w]ill are consistent with Decedent's writing style, and his habit and custom," and in finding that the 2009 will was valid, the court implicitly accepted these witnesses' testimony as true and found that the will was properly executed. (*Haigler v. Donnelly* (1941) 18 Cal.2d 674, 677-678 ["There is no error in the failure of the trial court to make an express finding upon an issue if it is implicit in the findings made, and there is no necessity expressly to negate contradictory allegations."].)

We therefore affirm the trial court's finding of due execution of the 2009 will as supported by substantial evidence.

b. *Substantial Evidence Supports the Court's Findings Regarding the Terms of the 2009 Will*

Sanchez next argues that substantial evidence does not support the court's findings regarding the terms of the 2009 will. Sanchez asserts that because each witnesses' testimony regarding the 2009 will's form and content varied, "[t]here was no substantial

7

evidence presented as to a particular 2009 document or integrated documents constituting a will." (Boldface and underscoring omitted.) We disagree.

Under Probate Code section 8000, subdivision (b), a petition for probate of Decedent's will may be filed regardless of whether the will is lost or destroyed. The procedure for proving a lost will "must be substantially the same as that followed in cases involving produced wills. . . . 'The only difference between the probate of a will which can be produced and one which has been lost is as to the nature and quantity of the evidence required to prove it.' " (*Swift v. Superior Court* (1952) 39 Cal.2d 358, 363; Ross et al., Cal. Practice Guide: Probate (The Rutter Group) ¶3:285 ["A lost or destroyed will may be proved in the same manner as any other will."].) Thus, the existence and content of the will can be proven with testimony from witnesses and other extrinsic evidence. (*Estate of Williams, supra,* 155 Cal.App.4th at p. 211 [relying on testimony to authenticate the decedent's signature and handwriting on a will].)

Here, the court relied on the testimony of Decedent's nephew and his wife, as well as Decedent's sisters to establish the contents and form of the 2009 will. Although each witnesses provided varying descriptions of the type of paper the will was on, its page-length, and the specifics of its contents, all agreed that the 2009 will named Sanchez as executor and required equal division of Decedent's entire estate among the seven siblings. As each witness spent only a short length of time viewing the will and last saw the will four years prior to testifying, discrepancies between the witnesses' testimony was to be expected.

The Supreme Court has explained: "It would be a rare case in which two witnesses testifying from memory to the contents of a will would agree about every detail as to the testamentary dispositions. If it were required that their testimony should coincide in every particular, however minute and unimportant, in order to establish a lost will, the possibility of proving such will would be extremely remote, except where a copy in writing had been preserved and could be produced. If that were the case the practical effect of our statute would be the same as in those states where the production of a written copy or draft of the lost will is required. We cannot agree to the proposition that

8

the legislature could have intended such inconsequential results from this statute as would ensue if it were given the construction contended for." (*Estate* of *Patterson* (1909) 155 Cal. 626, 632-633.)

The discrepancies between the testimony did not render inadequate the evidence supporting the existence of and terms of the 2009 will. Substantial evidence, in the form of the consistent testimony that the 2009 will existed and required equal division of Decedent's property among his seven siblings, supports the court's findings. This provision of the will requiring equal division of the estate has clearly been proven and should be admitted to probate. (See *Estate* of *Patterson, supra,* 155 Cal. at p. 632 ["Any substantial provision of a lost will, which is complete in itself and independent of the others, may, when proved, be admitted to probate, though the other provisions cannot be proved, if the validity and operation of the part which is proved are not affected by those parts which cannot be proved."].)

To the extent Sanchez asserts that the court's findings regarding the terms of the 2009 will were improperly based on the list of real properties in Decedent's March 9, 2006 letter, Sanchez fails to provide us with any citation to the record to support her argument. (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 [A party must support its arguments with appropriate and page-specific references to the record; failure to do so effectively waives the argument].) Furthermore, testimony from the sisters and the nephew supports the court's findings that Decedent listed all of his properties in his will, consistent with the list in the March 2006 letter. Regardless, the exact list of properties is inconsequential as it has been established that Decedent devised his entire estate to his siblings in equal shares in the 2009 will.

Sanchez also asserts that "the testimony of the sisters is so identical that it is obvious that [the sisters] just read [Decedent's 1998 wills, letters and other documents] at the November 8, 2009 family meeting and manufactured the concept of a will, without knowing any true facts and without the ability to properly recall or prove any such allegations." Again, Sanchez provides no citation to the record for this argument. Furthermore, we will not reweigh the evidence or reevaluate the credibility of witnesses

9

on appeal, as Sanchez requests us to do. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479; *Estate of Schultz* (1960) 54 Cal.2d 513, 518 ["At the most, this is a case in which the evidence before the probate court would support conflicting inferences on the questions posed by appellant, but where either of two inferences may be reasonably drawn from the evidence by the trier of the facts, the reviewing court will not substitute its deductions for those of the trial court."].)

As stated above, the court's findings were supported by substantial evidence. Accordingly, we conclude that the court's findings regarding the existence of the will and its terms are supported by substantial evidence.

**2.      *The Court's Admission of the Letters from Sanchez's Attorney Did Not Prejudice Sanchez***

Sanchez argues that the court improperly admitted three letters from her former attorney, Kelly Warren, which were addressed to and received by an attorney for one of the siblings (a party in this matter). The court admitted the letters as a party admission or an authorized party admission . Sanchez asserts that she did not authorize the statements made in the letters, and that the letters constituted statements made during settlement negotiations and thus were protected by Evidence Code section 1152.

Assuming without deciding that the admission of the letters was error, such an error does not warrant reversal. In order to obtain reversal of the judgment on appeal, Evidence Code section 353 requires Sanchez to show that the erroneous admission of evidence resulted in a miscarriage of justice. "A miscarriage of justice should be declared only when the reviewing court is convinced after an examination of the entire case, including the evidence, that it is reasonably probable a result more favorable to the appellant would have been reached absent the error." (*Brokopp v. Ford Motor Co.* (1977) 71 Cal.App.3d 841, 853.) Sanchez has the burden of affirmatively demonstrating prejudice. (*Id.* at pp. 853–854.)

10

Sanchez asserts that the admission of the letters resulted in prejudice to her because they were used, in part, to establish Decedent's intent and to define the terms of Decedent's will. In its statement of decision, the court stated that it found "the terms of the January 9, 2009 holographic [w]ill to be as set forth in the second paragraph on page 1 of Attorney Kelly Warren's letter dated July 15, 2010, except as noted below. (Darnel's Exhibit 14)." The second paragraph of the first page of Kelly Warren's July 15, 2010 letter indicated that "all of [Decedent's] various items and assets, including the New Mexico property, real estate parcels, life insurance, annuity contracts, cash accounts and all other assets, should be inventoried under one roof and then all liquidated and divided equally among the brothers and sisters."

Yet, the court concluded that even if it gave no weight to the letters, it would have come to the same findings. The court explicitly stated: "Related to the above, the findings of the court would be its findings even with no consideration or weight being given to the letters from Ms. Sanchez's prior attorney, Kelly Warren. . . . Mr. Warren artfully expressed what everyone at one point agreed Decedent's testamentary intent was. The letters are corroborated by much other evidence."

We agree that the letters are simply cumulative and corroborative of a large body of evidence in the record that likewise indicates that Decedent's assets should be divided equally among the siblings. (*Rue-Ell Enterprises, Inc. v. City of Berkeley* (1983) 147 Cal.App.3d 81, 91 ["Such error is not prejudicial if the evidence 'was merely cumulative or corroborative of other evidence properly in the record,' or if the evidence 'was not necessary, the judgment being supported by other evidence.' "].) Testimony from Decedent's nephew Lawrence Tafoya, and Decedent's sisters Chacon, Murguia, Armenta, and Darnell, and a declaration from Lawrence's wife, Carol Tafoya all indicate that Decedent's 2009 will divided his property equally among all of the siblings. Every individual who saw or heard the will read to them, with the exception of Sanchez, concluded the will required equal division of assets.

11

The error, if any, was thus not prejudicial.  Consistent with the weight of the evidence, the court would have concluded the 2009 will devised the estate equally among the siblings, regardless of Mr. Warren's letter to opposing counsel.  The judgment was clearly supported by substantial evidence.

**3.      *The Court Violated Due Process in Determining the Title of Real Properties Associated With Decedent's Estate***

Both Sanchez and Murguia assert that the court violated their due process rights by ruling on issues that were not before it during the will contest trial.  Three petitions were filed with the court in this case:  Sanchez's petition to probate the 1998 wills, Darnell's petition to probate the 2009 will, and Darnell's petition to quiet title as to Decedent's real properties.  In the quiet title petition, Darnell alleged that Sanchez fraudulently recorded deeds to several of Decedent's properties in Sanchez's name and Sanchez's daughter's name following his death.  The court bifurcated the trial, and stated that "we're not deciding at this time the Darnell petition to determine title but are deciding the two competing petitions and what one of you described as a will contest."

Nonetheless, following the bench trial, the court made findings regarding the ownership and purchase of real properties.  In paragraphs 50 and 51 of the statement of decision, the court concluded that Decedent did not transfer the seven properties to Sanchez and her daughter, finding that "[n]either Decedent nor Ms. Sanchez and her daughter treated such deeds as delivered and effective before Decedent's death."  The court also concluded in paragraph 21 that "the 4020 North Figueroa St., Los Angeles, CA property held by Virginia Murguia, and the 1022 North State St. property titled to Ms. Murguia's daughter Denise, were purchased with the proceeds of a previous property owned by Decedent in Baldwin Park."

We agree that the court improperly issued findings regarding the character of the real property.  The trial court clearly limited this trial to the will contest.  " 'When there is presented for probate one or more instruments claimed to constitute a will, the only question legitimately before the court is whether or not the propounded instrument or instruments constitute a will; and in determining that question the court ordinarily has

12

nothing to do with the construction of the will, resolving inconsistencies in the disposition of property or interpreting the testamentary provisions.' " (*Estate of Cuneo* (1963) 60 Cal.2d 196, 206.) The court improperly exceeded the scope of its inquiry when it considered matters outside of the will contest.

The court also represented to the parties that the will contest was the only matter being decided at this trial and as such, the parties did not provide any argument, meaningfully proffer evidence, or affirmatively request a ruling on the issues raised by the quiet title petition. "The Fourteenth Amendment due process clause generally requires that a person be provided notice and an opportunity to be heard before the government deprives the person of property through adjudication or some other form of individualized determination." (*Matera v. McLeod* (2006) 145 Cal.App.4th 44, 60; see *Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 677 ["Denying a party the right to testify or to offer evidence is reversible per se."].) In making a ruling on the character of the properties, the court violated the parties' due process rights.

We reverse the court's findings as to the character of the properties and the estate's interest in such properties so that the parties, including those not involved in this action, i.e. Sanchez's daughter and Murguia's daughter, have " 'the opportunity to be heard at a meaningful time and in a meaningful manner. [Citation.]' " (*Margarito v. State Athletic Com.* (2010) 189 Cal.App.4th 159, 170; see *Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314 [" 'The fundamental requisite of due process of law is the opportunity to be heard' "]; *County of Ventura v. Tillett* (1982) 133 Cal.App.3d 105, 112 ["Due process requires that all parties be notified of the facts and issues in dispute, that each party be afforded a fair opportunity to present evidence in open court, and that judgment be rendered based on an evaluation of the evidence on each side, findings of fact and conclusions of law"], disapproved in part in *County of Los Angeles v. Soto* (1984) 35 Cal.3d 483, 492, fn. 4; *Bronco Wine Co. v. Frank A. Logoluso Farms* (1989) 214 Cal.App.3d 699, 717 ["Rendering a judgment for or against a nonparty to a lawsuit may constitute denial of due process under the United States and California

13

Constitutions" "because the nonjoined party has not been given notice of the proceedings or an opportunity to be heard"].)

Darnell asserts that Sanchez invited the court's error in ruling on this issue, and thus Sanchez cannot complain of the error on appeal. Darnell argues that "[w]hen an appellant submits evidence on an issue that may be outside the scope of the pleading, she cannot on appeal complain of the court addressing the very issue she raised," and cites *Estate of Armstrong* (1966) 241 Cal.App.2d 1, 7 (*Armstrong*), for this proposition. However, *Armstrong* does not stand for this proposition. In *Armstrong*, the appellant contended that the court erred in deciding the nature of the assets in the estate since it was beyond the scope of the trial. (*Ibid.*) The Court of Appeal concluded that the appellant had invited the error by affirmatively requesting the court to determine the nature of the property in the appellant's trial brief. (*Ibid.*) The Court concluded: "Assuming *arguendo* that the community or separate nature of the property was beyond the scope of the issues, appellant, in direct contradiction of her position in the court below, cannot be allowed to raise that argument here. To do so, would be to ignore the line of authorities holding that a party is estopped from asserting error on appeal which was induced by his own conduct." (*Ibid.*)

Contrary to Darnell's assertion, simply submitting evidence to the court regarding the ownership of the properties, without more, does not invoke the court's ruling on that issue. After thorough review of the record, we conclude that neither Darnell nor Murguia requested a ruling on the character of the property and the court made it clear that the trial was bifurcated. This trial solely dealt with the will contest. As such, we must reverse the findings regarding the estate's interest in the real properties.

To the extent that Murguia contends that the court violated her due process rights by finding that the joint tenancy bank accounts were not part of the estate distributed in the will and were not to be distributed, we conclude that the court properly issued findings on this matter. Here, the court stated: "The evidence also does not preponderate that the January 9, 2009 holographic [w]ill specifically lists the various bank accounts held by Decedent at the time of his death, or that it specified that the proceeds from the

14

bank accounts were to be divided equally by the seven identified siblings. [¶] . . . Therefore, as to non-joint tenancy bank accounts, the court finds these are assets of the estate that should be distributed under the January 9, 2009 holographic [w]ill equally to all seven siblings. As to bank accounts held in joint tenancy, the court does not determine these to be part of Decedent's estate to be distributed under the January 9, 2009 holographic [w]ill." Murguia specifically argues that the court erred writing the last sentence regarding the joint tenancy bank accounts.

Contrary to Murguia's argument, the court did not identify and characterize any particular bank account or any property as a joint tenancy bank account in this sentence. Particular accounts were never identified in the statement of decision. Rather, the court merely acknowledged the law of joint tenancies in this statement. "The principal characteristic of a joint tenancy is the right of survivorship. [Citation.] When one joint tenant dies, the entire estate automatically belongs to the other tenant. [Citation.] The right of survivorship is an interest that exists from the moment the joint tenancy is created. [Citation.]" (*Dieden v. Schmidt* (2002) 104 Cal.App.4th 645, 650.) To the extent that Decedent had any joint tenancy bank accounts, such accounts would never be part of his estate because upon Decedent's death, the entire account automatically belonged to the joint tenant. Thus, the court did not err by making this finding.

We therefore conclude that the court only violated Sanchez's and Murguia's due process rights to the extent that it made findings regarding the real properties. We thus reverse the findings regarding the character of the real properties and the estate's interest in such properties as set forth in paragraphs 21, 50, and 51 of the statement of decision.

## DISPOSITION

We affirm the court's order admitting the 2009 will to probate and appointing Darnell as executor. We reverse the court's findings regarding the character of the real properties and the estate's interest in such real properties at issue in paragraphs 21, 50, and 51 of the statement of decision because the court violated due process in making such findings. The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, Acting P. J.

I concur:

ALDRICH, J.

EGERTON, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16